COMPETITIVE EDGE v. STAPLES On the record before this Court, a jury could reasonably conclude that all of the following are true. Staples' bubble calculator, the predecessor of the pillow-top calculator at issue in this case, embodies the patent. It was admitted to be strikingly similar in comparison to Staples' bubble calculator at issue in this case, and a reasonable jury could conclude would show that it does, in fact, embody and infringe the patent. Second, Staples' employees in a variety of different situations confused the bubble and the pillow-top calculators. Within Staples' system, they have different skew numbers, they have different price points, and as some very clear pictures in the record demonstrate, they were mixed together in bins in the displays, and you can look, we put a small one in our reply brief, but there's a really nice couple of blown-up ones at A1346 and A1347 in the record that clearly show a single label and these calculators, bubble and pillow-top, not a bunch of others, just those two mixed together, and then a check-out, the point at which these two products are supposed to be most clearly treated differently within Staples' own system. They weren't treated differently. So what, to what extent is that relevant to the patent analysis as opposed to the trade test? Well, because I think it shows that the people who are most familiar with these products, whose job it is, in fact, to distinguish them, so whose ability to discriminate these products based on their design is much higher than that of the ordinary observer, couldn't do it. It was undisputed that this was not a question, that mixing them wasn't employee error, it was a directive. That's not undisputed. That is not undisputed at all, Your Honor. We vigorously dispute that. That's their assertion, and they're entitled to make that assertion. I don't have any doubt that they're going to go before a jury if this case is sent back to a jury as we believe it should and make that argument. I don't find it persuasive. How is it persuasive that they were intentionally bringing up two differently-priced calculators under the same price? We're entitled to dispute that, and we have disputed that. But most importantly, Your Honors, why is it that they would be run up on a visual basis rather than the bar basis, just the price bar that would be scanned? I don't know the details, and that's something that would certainly be entitled to be explored at a trial again. I don't know whether they were mislabeled initially, but that would be yet another error. However, whatever process produced this mistake, it was a mistake, and it was a result of confusion, and we are entitled to argue the jury that it was a result of confusion precisely because we know they have different price points and different skew points. But as Judge O'Malley points out, is that an issue of trade dress, or is that an issue of the patent design? It might also have been an issue of trade dress. Strictly of trade dress. Of course, we're not here. I don't think it is strictly an issue of trade dress. Can you separate the two? I think you can, and I think here what we've done is we've put the trade dress claim aside, and what we're saying here, the use we're making of this here, is that look, it's undisputed, or at least there's evidence in the record from which a reasonable jury could conclude, that these little novelty products, consumers don't spend a lot of time studying them, looking at them carefully. The kinds of features that catch people's attention happen quickly, but the people whose job it is, and if it's true that the people whose job it is to draw the distinctions, who are familiar with them, who pass by them every day, who deal with them, they pass through their hands, if they're having trouble distinguishing them, a reasonable jury could conclude that the ordinary observer would do so as well. And I want to talk especially about the admitted fact. This isn't just argument, but an admitted fact. Look at A1883 to A1884. Among all the features that are shared, and we've talked about several in the briefing, but among all the features that are shared here include the continuous contoured surface with the rounded, sort of puffy shape of the keys with the highest point in the center. That is admitted to be a shared feature of this patent, between the patent and the accused product. And the reason I emphasize that and call that more important is because Egyptian goddess says that when you have a feature that distinguishes the patent from the prior art, and that has been carried forward to the accused product, and I'm reading, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claim design that differ from the prior art. That's this Court's decision. And in fact, Staples was advised, Staples was advised in the process of developing it, that if it failed to distinguish the product, its accused product, in this respect, that this would be least safe. Now, I understand that the district judge was not persuaded. She thought the edges were more important than the surface. And, you know, that's fine. The problem is she confused her reaction with the full range of what reasonable jurors could. Who is the reasonable consumer, the ordinary consumer? No one really seems to define that here. Well, it's because it was admitted that basically, and both sides talked about this, it's anybody who can walk into a Staples store. I mean, those are the people who are, remember, they're using this product in a promotion. They're putting it out there to try and get people into their stores. Anyone. So, essentially, anybody who might want to compute, calculate it. Anybody who might want to calculate it. Anybody who might want to come into a Staples store for any reason, potentially. It's really any potential Staples consumer. And my understanding is Staples does pretty well. So are you saying the district court doesn't have the authority on summary judgment to look at this and make his or her own assessment with respect to looking at it as an ordinary observer? No. What I'm saying is this. The district court, of course, has to look at the product and the patent side by side. It's a question of how. And, again, Egyptian goddess talks about this. It can be difficult, and I'm quoting, it can be difficult to answer the question whether one thing is like another without being given a frame of reference. The background prior art provides such a frame of reference. But isn't there clear language in Egyptian goddess that allows for making that ordinary observer test in the absence of looking at the prior art as a threshold matter? And isn't that precisely what the district court referred to here? We do not dispute that the district court did that. We do not dispute that Staples is up here saying that that was defensible. I don't think it is. I think there is language that this court used that says in some cases that's going to happen. And there may be some cases where you don't have any other evidence. But design patent infringement just can't be different from any other civil case. What other civil case do you close your eyes to the evidence that the jury would in fact have, would in fact consider, and that, in fact, this court has done? I guess I'm not clear. Are you saying that the deficiency here with respect to the district court is she could not make any observation in the absence of looking at it in the context of the prior art? She had to refer to the prior art for analysis? When you have prior art before you that tells you what feature of the patent is distinct from the prior art, and you have an admitted fact that that feature is the same, that feature is carried through to the accused product, what you can't do is you can't say, because I find that the edges, this different feature, that by the way is not distinct from the prior art. There are examples of prior art calculators, there's an array of them at 8, 4, 13, that shows scalloped edges. What you can't do is you can't say, I think this other feature is more important, and she can think that. But she can't say, and no reasonable jury could think otherwise. What prior art are you pointing to, because you didn't really focus on prior art in your opening brief? Well, that's because, I mean, in our opening brief, our view was, you know, we're trying to show the substantial similarity between the patent and the accused product. But if you look at, it's at 8, 4, 13, and the record is an array of prior art. There's a couple of better pictures at 8, 7, 57 and 8, 7, 69. There's at least three calculators shown that have scalloped edges in it, but there are no calculators shown that have this continuous contoured surface. And so what we're saying, Judge Prost, and this is very important, we are not saying you can't compare them, but what we're saying is you have to compare them through the lens that the law says the jury and the ordinary observer would compare them, because that's your job as a judge. Your job as a judge at summary judgment is to say... So I guess I'm really not clear what you're saying. Are you saying that you can't do this analysis in the absence of discussing the prior art? If the evidence, if there is prior art evidence in the record that speaks to this issue, you have to consider it. That is our view. And I think that would be true of any... And it's not just the prior art. We think it's also true that because you have this confusion among Staples' own employees, you have to consider that as well. And I don't want to let Dr. Little's testimony get lost in the shuffle, Your Honor. And I want to talk... There's both quantitative and non-quantitative evidence, but I really want to emphasize at this moment the non-quantitative evidence. He talked about this practice called tweaking. And that's where you have a product that's time is up for whatever reason, but your business, reasonably enough, wants to extend and prolong its life. So it makes a few little changes, maintains its essence, makes a few little changes and sort of reintroduces it as a quote-unquote new product. Now what Dr. Little was prepared to testify is, and he's an admitted expert in marketing, he's prepared to testify that's exactly what happened here. Staples, for instance, among the other arguments that I think that they could try or would try... So you're challenging her exclusion on his testimony on the basis of what? That he was an expert? He's an expert. And they should have come in and testified to the proposition that people tweak little things? And that this product was tweaked? And that this product, the Pilotok calculator, was it tweaked? Or is that a factual question? Is that a legal question? Absolutely. Is tweak a term of art somehow? It is. It's a term that he describes as a term in the marketing business. It is a term that shows the way that ordinary, that the way that businesses try to influence the minds of ordinary consumers so that they associate one product with another, which is exactly what's going on here. But Dr. Little certainly did not use ordinary consumers for his study, did he? Well, this testimony is separate from the study. That's the other part of it. Yes, that's right. And what Dr. Little did on that, with regard to that, Your Honor, was use a favorable subclass. There's no dispute that college students are ordinary consumers of these calculators. And he said they're at least as discriminating and probably more discriminating. But students in his own class. That's true. That's true, Your Honor. That's not a biased group. There was... I don't think so, Your Honor. The district court did almost conclude that. Well, we think that, you know, the students that he used, they were asked the very questions that a jury would be asked. Well, let me ask you a question regarding the standing of competitive edge. We couldn't find any assignment of the patent to competitive edge. So is competitive edge a real party? I did notice that Staples made that argument, and we did not put in any evidence that there's been any assignments. So it seems that Mr. Greenspun, who's a perfectly legitimate plaintiff in the case... He's the patent owner. He's the patent owner, yes, Your Honor. But not competitive edge. That's correct, Your Honor. Competitive edge should be dropped in the case. If the case goes forward, that might be an issue that could be handled on a going-forward basis. I see that I'm into my rebuttal time, and I would like to reserve the balance of my time. Thank you. Ms. Moore. May it please the Court. I'd like to start with the prior art issue, which Mr. Huckman just addressed. It was not raised at all in the opening brief, and I think the law is pretty clear that it's therefore waived. We had no opportunity to address it because it didn't come up until the reply brief. That is, their argument that the judge was required to consider the prior art in order to determine that the designs were distinct. Did they argue that issue below? I was just going to say, more to the point, below, they argued, we argued in the district court, that the judge under Egyptian Goddess was permitted to just look at the two diagrams. You've seen it, I'm sure, in our brief. Just look at them. You can tell they don't look alike, and that under Egyptian Goddess, she perfectly had the authority to do that, and I think Egyptian Goddess is very clear that she did, that a judge has the authority to do that. Well, but doesn't Egyptian Goddess define the ordinary observer as someone who is familiar with the prior art? Well, let me finish my thought on the lower court, and then I'll get to that, Your Honor, because what we did in the lower court was we argued she could do it without looking at the prior art, but then we said, if you believe you do want to look at the prior art, here it is, and we produced it, and the page that Mr. Hockman was referring to that has that strip of all the comparative calculators, that's from our summary judgment brief. We're the ones who put that in front of the judge at the district court, and what they They conceded before the district court that in some cases, consideration of the prior art is unnecessary, so they conceded that to the district court. Then they pointed out that the burden was on Staples to produce any prior art that we wanted to have her consider, that's at 1138 of the appendix. Then they claimed that Staples had not identified the prior art upon which it relied in its infringement contentions, and therefore told the judge that she should not consider the prior art that Staples had pointed out to her, and they pointed out no prior art. So you've got a situation where they're saying to the district court judge, you can make, sometimes consideration of the prior art is unnecessary, they say the burden was on us to produce it, they claim that we didn't, now in our reply brief we pointed out that we had produced it, but for purposes of this, they claim we didn't produce it, and then they told her not to consider it. Then, so that was the whether she considered it, she didn't cite it, and she didn't reference it in her opinion, but it was in our papers, and that page with the pictures on it was, I assume she read our brief, so she saw it in terms of the brief, but so they told her at the district court level, you shouldn't even consider Staples' argument with respect to the prior art. So she doesn't address it in her opinion. In their opening brief, they don't say word one about it, so we were surprised, so we put in our brief a case law that says, hey, they didn't mention it, so it's waived. Then they spend two-thirds of their reply brief arguing about it. I think it's foreclosed to them at this point. And by the way, I do think it's wrong. Now to get to your question, Judge O'Malley, what Egyptian Goddess says, and I think it's very clear, is it says, in some instances the claim design and the court, that the patentee has not met its burden of proving, etc. Then the next line says, in other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question, whether the ordinary observer would consider the two designs to be substantially the same, will benefit from a comparison of the claimed and accused designs to the prior art. Well, but the reality is that that's one of the problems with the fact that the court doesn't anywhere define who the ordinary observer is, and no one seems to want to define it in their briefs. And Egyptian Goddess does say that the hypothetical ordinary observer is someone who wants to purchase this product, but is also familiar with the prior art. Well, again, the judge presumably read our brief. She saw the prior art in our brief. She has seen calculators in her life. I mean, if you're looking at who the ordinary observer is, you wouldn't be lining up the prior art that we put in the appendix in front of them, so I think you're talking about somebody's ordinary experiences in terms of the prior art. And with respect to who the ordinary observer is, Mr. Hockman said it was undisputed that it was like anybody who has the capacity to buy a calculator. It's not true. That is not undisputed. We think there were two potential types of ordinary observers, and these are supported by cases that are cited in our survey case. There's the Armanac, I can't read my own handwriting, Armanac Associates versus Saint-Gobain and Goodyear Tire. They're both cited on page 40 of our brief, where they say that the ordinary observer has to be the ordinary purchaser of the product in question. And in both of those cases, they define the ordinary purchaser very specifically. One of them is Goodyear Tires. They say it has to be the ordinary purchaser of truck tires, because that's what they're talking about. Anyway, so there has to be a specific definition of ordinary observer. In this case, there are two potential categories. There would be Staples purchasers, who would buy these things, who would be buying these at a Staples store, right? Now, the plaintiff never made any attempt, and their expert testified in his deposition he made no attempt to define who the ordinary purchaser was. You know, you could define the ordinary purchaser of this as probably mothers of grade school children, you know, back to school. I mean, these aren't calculators that college students use. Do you think that any mother or any college student that comes in to buy one of those really knows what the prior art contains? I don't think that... Is that just a hypothetical requirement imposed by this court? Is that a real requirement that we need to have? Or is it just someone coming in, looking at the product, saying, I want that product, and I will buy it, and it's different than somebody else's product, period. What I think Egyptian Goddess is saying about the prior art is that if the court is going to, you know, that when the court takes the first step of saying, here's the patent drawing, and here's the design, that there's sort of a first step that the court can say, you've got a design patent on an apple, and this is a banana. You know, they just don't look alike, no matter what evidence they put in is going to make them look alike. So does that make the judge the ordinary purchaser, the ordinary observer? I think it puts the judge in a position to say that in this situation, I, as, you know, the judge, I am making the judgment that they will be unable to meet their burden of proving that these two would be so similar that they would be mistaken for each other. And I think it's a gatekeeper role, and I think it's a worthwhile gatekeeper role, unless you want to have the federal courts trying, you know, thousands of design patent cases where they look nothing alike. I think it's a legitimate gatekeeper role. And then I think that the court says, and the quote that I read from the case where they say, in other instances, I think they say, well, you know, if you look at it and you say, I can't tell, just by looking on the face of them, whether they're that dissimilar, it would benefit from looking at the prior art. And that's why we provided the prior art to the judge, the district court. Yeah, the problem, I understand what you're saying, but the problem is you don't have an applicable number of data here. You have calculators that have some similarities. So it's, I mean, the question is where you draw the line. That's correct. And where the gatekeeper function of an ordinary observer morphs into what the jury ought to be doing. I agree with you, Your Honor. And here, I guess what the other side seems to glob onto is her reference to specific features. And so the judge here seemed to emphasize certain features above others. And at that point, when you're doing that kind of analysis, why isn't that the point at which this at least becomes a question of looking at it in the context of the prior art to discern which features are relevant here and which are not? I don't think the judge did look at, you know, the laundry list that the Egyptian goddess cautions away from. What she was doing was explaining why she granted summary judgment. I mean, and there are cases cited in our brief where that's been expressly sanctioned by this court that you can explain why you granted it. I mean, if you said that you can't identify any particular feature in the decision without sort of running afoul of this, you know, laundry list rule, then she would be, I guess, best advised to say, I find that the overall impressions are so dissimilar that they can't meet their burden and not explain why. What she was saying, I believe, was that the overall appearance, which is what she's supposed to be looking at, you know, when you look at that drawing and you look at this product, what is the overall impression of its physical appearance? And she, I believe, correctly said what the overall impression of this drawing is this bubble shape, right? All these bubbly things are on the side of it, this whole bubble. And the overall impression when you look at this is this sleek-sided calculator. And I think she's perfectly appropriate to do that. And let me address for a moment, they argue that the point of novelty is actually what they're arguing, but they argue that the unique feature is that there's a continuous contoured cover, you know, that it's all one piece of material and that that was the novel thing that she discounted. Well, I think that's an attack on her claim construction because at claim construction time, which they didn't appeal, by the way, in which she adopted what they wanted, at claim construction time, we asked the judge to give us, to identify things like, you know, the curved scalloped edges and stuff in the claim construction. And she declined to do that, saying that she thought Egyptian goddess cautioned against it, which I think it does, but so her claim construction was what the plaintiffs asked for, which was a calculator that has the overall appearance of the drawings, right? Now, that, to my mind, to say that now what is unique about it is that it has a continuous cover with contoured keys is basically trying to do a claim construction, to say that the overall appearance of this is a continuous cover with keys, which, by the way, the solid black lines here are all part of the claim, the design patent. This could be made out of hard plastic, and each key itself, these could be divisions between keys. You know, you could make a calculator that looks just like that, that does not have a rubbery continuous surface. So again, I think what they're trying to do is sort of a backdoor attempt at redoing the claim construction in a manner that they think benefits them. And so, you know, again... But isn't it true, though, that the district court did emphasize all the distinguishing features that you emphasized? You asked the district court to consider these distinguishing features, and the district court then looked at those without any reference to the prior art. She didn't reference the prior art in her opinion. That's correct. I mean, I believe she read our brief where we said that we put in other prior art calculators that had different kinds of scalloped edges. And what Egyptian Goddess says is if you have prior art that is closer to the patented design than the accused design is, then the accused design doesn't infringe. And so our point there was you'd have to have particularly scalloped edges that look just like this in order to infringe this design in light of other calculators that have scalloped edges, albeit somewhat different. And if you look at that string of calculators on the page from our summary judgment brief, this one sticks out like a sore thumb. It doesn't look anything like them. And so, again, I think that the prior art, if it were to be considered, which it shouldn't be because it was waived, but if the prior art argument were to be considered, it actually supports her view. With respect to those individual items, though, I mean, you said you think she read your brief, but she specifically says Staples asserts that the other differences include the removable nameplate of the patented design, which is problematic when both of them had nameplates on them when they were being sold, but the indented circles on each of the accused design keys, the recess display. In other words, you invited her to look at the very individual elements that pose some problem under Egyptian goddess with respect to her ability to do that at the summary judgment stage. I don't think pointing out the differences in the design which contribute to the overall impression is wrong. I mean, I don't know how I would argue that this doesn't look like that without pointing out to the court ways in which they don't look alike. I mean, I can't see why that would be wrong to point out to the judge, and she recites them back, but she very clearly says all throughout her opinion that she's judging based on the overall appearance of the calculator, of the drawing, and the opening brief of the plaintiff so what they basically did was say she didn't do what she said she did. And if I could get back just one minute because Judge O'Malley, you asked about the ordinary observer and I talked about somebody who's going into a staple store to buy this, right? There's another category of potential ordinary observers and that would be purchasers of competitive edges product because they don't sell it in a retail store like this, right? They sell them in bulk and their own experts said that their customers are sophisticated bulk buyers of promotional products, right? And the removable nameplate which is clearly part of their claim under the judge said anything that was, the district court said that anything that was in the drawings was claimed, it's in solid lines, there's a bracket pulling it in, it's clearly part of the claims and it would be very significant to a purchaser of a competitive edge product because they buy in bulk and they want to, you know, customize it. They want to put on, you know, some company's name here and then they clump the thing back in and it, you know, after they're done with it, it would look similar to this but have a different name in it but that feature which is claimed in their patent and has to be considered would be very significant to an ordinary observer when defined as a customer of competitive edge and the important point is that the plaintiff who bears the burden throughout this case approving infringement didn't do anything to determine who the ordinary observer was whether it's the staples customer or the competitive edge customer and I see that I'm out of time so unless the court has further questions? Thank you. Thank you. Thank you, Your Honor. Judge Post, I think you hit directly on the issue. The question is what to emphasize, what to be sure to emphasize. This is a case about the surface versus the edge. Now they go and they put pictures that are flat on a page and so naturally the edge looks like it's more important but the record here supports giving, that a reasonable juror could look at the surface and as for whether this was waived there's just no way. Look, page 42 to 43 of the brief we talk of our opening brief we talk about the importance of the continuous contoured surface and it's important and that they had argued that in fact their previous that their product doesn't contain that feature that distinguishes it from the prior art. But look at what they admitted the admitted fact and I'm reading from A. 1884 Ms. Elster, their expert admits that in both the 734 patent and the pillow top calculator the buttons are part of a continuous contoured surface which is a similarity between the two designs and that departs from the prior art calculators of which she is aware. This issue was front and center. This question should we give the should we privilege the edge or should we privilege the surface which is what we were emphasizing was is the core issue in the case and the question about the gatekeeper role which is there's no there's no reason to believe that every case of design patent infringement has to go to trial but when you have an issue like this and you have Egyptian goddess which says that the feature that distinguishes the patent from the prior art is the feature that strikes the ordinary observer then a reasonable juror could conclude that that is the feature that would that would strike the ordinary observer. It's just very hard to understand how it could be any other way and indeed on this record and I noticed that Ms. Moore didn't say anything about the other evidence and there is other evidence. The state was employees confusion. The evidence of tweaking which I began to discuss which was another way of dealing with this idea that they tried despite their admission to argue that their that their their product had a an indented surface in fact it didn't have a continuous conflict surface and in fact your honors you can look at their patent it's at A438 and 439 look at figure 1 of their patent that's got a really you look at the pictures of that it's sunken the surface is sunken they didn't do that they didn't actually sink the surface of the key and what and what Dr. Little was going to testify he was going to explain that's the kind of tweaking I'm talking about. They could have they had been advised to distinguish this feature they chose not to because the people whose job it is at Staples to understand how their consumers their ordinary consumers are going to respond to this product knew that this was this was an important feature that gave it the look and feel that made that made the previous iteration of this product so successful and that's what Dr. Little was going to testify he was going to explain and so this adds yet another group of people to the legend who have a different view reasonably enough we submit from Judge Kendall Judge Kendall has her view and that's fine but we're entitled to try to persuade jurors as much as the defendants are entitled to try to persuade Judge Kendall if there are no further questions your honors appreciate your time thank you case is submitted